IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEMPHIS DIAZ | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | NO. 07-4598 |
| | : | |
| CITY OF PHILADELPHIA, ERIC IFFRIG, | : | |
| Individually and in His Professional Capacity | : | |
| as Recreation Projects Director of Defendant | : | |
| City of Philadelphia, and RICHARD TUSTIN | : | |
| Individually and in His Professional Capacity | : | |
| as Director of the Capital Program Office for | : | |
| Defendant City of Philadelphia | : | |
|     Defendants. | : | |

DuBOIS, J.                                                                                                                                                                                                                                                                July 27, 2009

# **M E M O R A N D U M**

**I.    Introduction**

Plaintiff Memphis Diaz initiated the instant lawsuit as a result of being denied the opportunity to sit for a promotional exam for the position of Design and Construction Project Manager with the City of Philadelphia's Capital Program Office ("CPO"). Plaintiff asserts the following claims in the Complaint: race and/or national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), 42 U.S.C. §§ 2000e-2(a)(1), (a)(2) (Counts I and II); retaliation under Title VII, 42 U.S.C. § 2000e-3(a) (Count III); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a)(1), (a)(2) (Counts IV and V); retaliation under the ADEA, 29 U.S.C. § 623(d) (Count VI); violation of his equal protection rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 (Count VII); conspiracy to deprive him of equal protection of the laws in violation of 42 U.S.C. § 1985(3) (Count VIII); race and/or national origin discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.

1

C.S.A. § 955(a) (Count IX); and retaliation under the PHRA, 43 Pa. C.S.A. § 955(d) (Count X). Named as defendants are the City of Philadelphia ("the City") and individual defendants, Eric Iffrig, Recreation Projects Director of the CPO, and Richard Tustin, Director of the CPO.

Presently before the Court is defendants' Motion for Summary Judgment. For the reasons that follow, defendants' Motion for Summary Judgment is granted with respect to Counts I, II, III, VI, VII, VIII, IX, and X of the Complaint. The Court defers ruling on the Motion with respect to Counts IV and V and directs supplemental briefing on those claims in light of Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343 (2009). See Part IV.B., *infra*.

## II. Background

On June 30, 1990, plaintiff, an Hispanic male, began working for the City as an Architectural Project Coordinator II. (Charge of Discrimination, Mar. 13, 2006, Ex. J to Def.'s Mot.) On April 2, 2004, the City's Office of Human Resources received plaintiff's application to take an examination for promotion to the position of Design and Construction Project Manager. (Michael McAnally Aff., ¶ 3, Oct. 28, 2008, Ex. A. to Def.'s Mot.) At that time, plaintiff was forty-four years old. (Charge of Discrimination (listing plaintiff's date of birth as March 24, 1960).) The Design and Construction Project Manager position requires that the applicant have, *inter alia*, "two years of engineering or architectural engineering experience, *above the full performance level*, which has involved the design or construction, renovation and rehabilitation of large, multi-occupancy commercial buildings and related systems of equipment." (Id. ¶ 5 (emphasis in original).) Plaintiff's application for the promotion was rejected on May 27, 2004 because, according to defendants, plaintiff "did not have two years of experience working above the 'full performance level' . . . ." (Id. ¶¶ 4, 7.) Joseph Palentino, a Caucasian male who was then

2

thirty-five years old, was permitted to take the examination and received the promotion to Design and Construction Project Manager on May 16, 2005. (Charge of Discrimination; McAnally Aff. ¶ 8).

On December 1, 2005, plaintiff sent a letter to defendant Iffrig, one of plaintiff's supervisors, in which he voiced his concern about "the new duties that [defendant Iffrig] added to [his] line of work," that his position should be reviewed because he was "covering the duties of an Architect III and an Architect IV," and that he did not understand why he was found "not quite suitable to hold the position"[1] despite his "abilities of being very resourceful and qualified." (Pl.'s Letter to Def. Iffrig, Dec. 1, 2005, Ex. B. to Def.'s Mot.) Thereafter, on December 19, 2005, Mariette Buchman, the Deputy Director of the CPO, sent an e-mail to plaintiff stating that, in response to his December 1, 2005 letter "regarding [his] dissatisfaction with [his] job duties," the CPO was going to conduct an audit of plaintiff's position.

On or before February 16, 2006,[2] defendant Iffrig approached plaintiff after work to discuss, according to defendant Iffrig, "the issues [plaintiff] was having with Mr. Palantino [sic] as his supervisor." (Eric Iffrig Dep. 29: 19–20, Sept. 8, 2008, Ex. D. to Def.'s Mot.) The nature and content of the discussion are in dispute. Defendant Iffrig asserts that he only informed plaintiff that "he wasn't helping himself with an obstinate manner and not listening to his

---

[1] Although the language in the letter is not precise, the Court infers that "the position" to which plaintiff refers is the Design and Construction Project Manager.

[2] The record does not reflect when exactly this conversation between plaintiff and defendant Iffrig took place. However, it appears that the conversation must have occurred on or before February 16, 2006 because plaintiff sent an email on that date referencing this conversation with defendant Iffrig. (Pl.'s E-mail to Tustin, Feb. 16, 2006, Ex. E to Def.'s Mot.) (stating that Mr. Iffrig was sent "to harass me and to acuse [sic] me of insubordination"). Thus, the conversation must have occurred on or before February 16, 2006.

supervisor, who was Mr. Palantino [sic]" and that "replacement people" would be needed in the department since a number of former employees had retired. (Id. at 29:25–30:10.) Plaintiff, however, contends that defendant Iffrig was asking him "basically to retract myself from my position [in] my complaint" and telling plaintiff that he was "creat[ing] chaos in the office" and that "this is going to cost [him], and it's going to affect [his] career." (Pl. Dep. 43:13–14, 46:15–17, 50:20–21, Sept. 8, 2008, Ex. A to Pl.'s Resp.) In addition, plaintiff asserts that defendant Iffrig "was telling [plaintiff] that he has to pass his legacy to somebody younger who can . . . run it for a longer time." (Id. at 44:9–11.) Defendant Iffrig claims that he "never mentioned [that the replacements] had to be younger." (Iffrig Dep. 30:10–11.)

Following this incident, plaintiff wrote an e-mail to defendant Tustin stating that he had been waiting for completion of his audit for over two months and claiming that defendant Tustin had "invest[ed] time and effort to undermine my claim, by sending Mr. Iffrig to harass me and to acuse [sic] me of insubordination . . . ." (Pl.'s E-mail to Tustin, Feb. 16, 2007, Ex. E to Def.'s Mot.) By e-mail of February 17, 2006, defendant Tustin responded to plaintiff, denying that he had sent defendant Iffrig to harass plaintiff. (Iffrig E-mail to Pl., Feb. 17, 2006, Ex. F to Def.'s Mot.)

On February 27, 2006, an admonition hearing was scheduled as a disciplinary measure against plaintiff. (Def.'s Mot. 6.) The hearing was cancelled. (Pl.'s Dep. 53:22–23.) A Settlement Agreement was thereafter drafted stating that the "meeting on 2/27/06 will be considered a counseling session" for plaintiff. (Settlement Agreement, Ex. I to Def.'s Mot.) Plaintiff never signed the Settlement Agreement. (Id.)

On March 13, 2006, plaintiff filed a Charge of Discrimination with the Equal

4

Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Charge of Discrimination.) The City's Office of Human Resources completed its audit on May 2, 2007 and found that plaintiff's "duties and responsibilities are not consistent with the allocating factors for Design and Construction Project Manager." (Audit, May 2, 2007, Ex. A to Defs.' Mot.) Plaintiff received a Right to Sue letter on August 4, 2007. (Dismissal and Notice of Rights, Ex. A to Compl.) Plaintiff filed the instant Complaint on November 1, 2007.

### III.     Legal Standard

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

## IV. Discussion

### A. Discrimination Claims under Title VII and the PHRA (Counts I, II, and IX)

In his Complaint, plaintiff alleges race and/or national origin discrimination in violation of Title VII, 42 U.S.C. §§ 2000-e2(a)(1), (a)(2) (Counts I and II, respectively), and in violation of the PHRA, 43 Pa. C.S. § 955(a) (Count IX).

For the reasons discussed below, the Court concludes that each of these claims is time-barred and must be dismissed.

#### 1. Title VII Discrimination Claims Are Time-Barred (Counts I and II)

To bring suit under Title VII for discrimination, a plaintiff has 300 days after the alleged "unlawful employment action" to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1); Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (observing that, as a "deferral state" with an "agency authorized to grant relief for federally prohibited employment discrimination," Pennsylvania requires that plaintiffs file an administrative charge within 300 days of the allegedly discriminatory employment action). Plaintiff filed a Charge of Discrimination with the PHRC and the EEOC on March 13, 2006. Thus, any alleged discriminatory employment action must have occurred on or after May 17, 2005—300 days before the Charge of Discrimination was filed.

Defendants claim that the alleged discriminatory act occurred on May 27, 2004, the date on which the City rejected plaintiff from taking the examination for promotion, which falls outside the limitations period. Plaintiff argues that the alleged discriminatory acts occurred either: 1) on December 1, 2005 when "[p]laintiff again expressed an interest in sitting for the examination, but was again denied an opportunity to do so, which the junior and less qualified Mr. Pallantino [sic] was allowed to sit for the examination." (Pl.'s Resp. 12 (citing Compl.

¶¶ 31–32)); or 2) on or before February 16, 2006 when defendant Iffrig initiated a conversation with plaintiff about his performance as plaintiff was leaving work. (Id. (citing Diaz Dep. 40–46).)

In determining when an alleged "unlawful employment practice" occurred for the purposes of Title VII, the "key inquiry" is "identifying the precise alleged unlawful employment practice." Watson v. Eastman Kodak Co., 235 F.3d at 855. In National R.R. Passenger Corp. v. Morgan, the Supreme Court of the United States specified that the "practice" at issue must apply to a "discrete act or single 'occurrence' even when it has a connection to other acts." 536 U.S. 101, 112 (2002). The Supreme Court continued:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'

Id. at 114. In order to be timely, the "discrete discriminatory act" must have occurred within 300 days of the filing of the charge. Id. at 113. Moreover, the "'proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful." Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (quoting Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979)) (emphasis added).

The Seventh Circuit has also addressed the issue of determining when the alleged discriminatory act occurred—and hence when a plaintiff's cause of action accrues—stating:

> Accrual is the date on which the statute of limitations begins to run. *It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured.* The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the *'discovery rule'* of federal common law, which is read into statutes of limitations in federal-question cases . . . .

7

Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1991) (emphasis added). Thus, applying the "discovery rule" to the instant case, the Court must identify the "date on which the wrong that injures the plaintiff occur[ed]."

In Oshiver v. Levin, Fishbein, Sedran & Berman, the Third Circuit agreed with the Seventh Circuit's analysis in Cada and further emphasized the difference between plaintiff's discovery of the *actual* injury versus the *legal* injury. 38 F.3d 1380, 1386 (3d Cir. 1994). "[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." Id. The Oshiver court observed that the "legal injury" in Cada—which did *not* trigger the statute of limitations—was the time at which "the victim first perceived that a discriminatory motive caused the [discriminatory] act." Id. at 1386–87; see also Hanani v. N.J. Dep't of Environmental Protection, 205 Fed. Appx. 71, 76 (3d Cir. 2006) (affirming District Court's ruling that plaintiff's claim accrued on the date plaintiff was notified that her name was removed from a list of candidates for promotion, not on the date on which she learned which candidates received the promotion).

Plaintiff's argument as to the dates on which his cause of action accrued must be rejected. With respect to the first date (December 1, 2005 when plaintiff "again requested to take the exam"), plaintiff's *own* letter of December 1, 2005 in no way constitutes a discriminatory act of his employer against him. Moreover, the letter does not reflect any request to take the examination for promotion. As to the second date (on or before February 16, 2006 when defendant Iffrig spoke with plaintiff after work), the Third Circuit has made it clear that a cause of action does not accrue when a potentially discriminatory motive is discovered. See Oshiver, 38 F.3d at 1386. Rather, it is the date of the actual injury that triggers the limitations period.

8

The gravamen of plaintiff's discrimination claim is a failure to promote. Specifically, plaintiff applied to take the examination for promotion to the position of Design and Construction Project Manager, and his application was rejected on May 27, 2004. Instead, Mr. Palentino was permitted to take the examination and ultimately received the promotion. Thus, May 27, 2004 is the date of the actual injury to plaintiff and when plaintiff's cause of action accrued. Because this date falls outside the 300-day limitations period prescribed by Title VII, plaintiff's discrimination claims under Title VII are time-barred. Accordingly, the Court grants defendants' Motion for Summary Judgment with respect to Counts I and II of the Complaint.

### 2. PHRA Discrimination Claim Is Time-Barred (Count IX)

Under the PHRA, "a plaintiff must have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. S. §§ 959(a), 962); Pourkay v. City of Philadelphia, No. 06-5539, 2009 WL 1795814, *4 (E.D. Pa. June 23, 2009) (observing that the filing deadline imposed under Title VII and the PHRA are "strictly construed"). Because plaintiff filed his Charge of Discrimination with the PHRC on March 13, 2006, any alleged discriminatory act must have occurred on or after September 14, 2005—180 days before the Charge of Discrimination was filed.

As stated in Part IV.A.1., *supra*, with respect to plaintiff's Title VII discrimination claims, the crux of plaintiff's claim is a failure to be promoted to the position of Design and Construction Project Manager. For the same reasons discussed in Part IV.A.1., *supra*, concerning the untimeliness of plaintiff's discrimination claims under Title VII, plaintiff's discrimination claim under the PHRA is also time-barred. The actual injury to plaintiff occurred on May 27,

9

2004 when his application to take the examination for promotion was rejected, and he failed to file his Charge of Discrimination within 180 days of that date, that is, by November 23, 2004. This date falls well before September 14, 2005 and the 180-day limitations period mandated by the PHRA. Accordingly, the Court grants defendants' Motion for Summary Judgment with respect to Count IX.

### B. Discrimination Claim Under the ADEA (Counts IV and V)

The Complaint alleges age discrimination in violation of the ADEA, 29 U.S.C. §§ 623(a)(1), (a)(2) (Counts IV and V). These claims are based on two main allegations: (1) that defendant City failed to promote him to the position of Design and Construction Project Manager due to his age and instead promoted someone younger than him to that position; and (2) that defendant Iffrig told plaintiff that "he has to pass his legacy to somebody younger who can . . . run it for a longer time." (Pl.'s Resp. 13; Pl.'s Dep. 44:9–11.)

The Court notes that the parties' briefs with respect to defendants' Motion for Summary Judgment were submitted on or before December 1, 2008. On June 18, 2009, the Supreme Court rendered a decision in Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343 (2009), which directly impacts the law in ADEA discrimination cases. Since the parties have not had an opportunity to address the impact of Gross on plaintiff's age discrimination claims, the Court concludes that it is premature to rule on plaintiff's age discrimination claims set forth in Counts IV and V of the Complaint. Accordingly, the Court will defer ruling on defendants' Motion for Summary Judgment with respect to Counts IV and V of the Complaint and directs supplemental briefing on those claims in light of Gross.

C.     Retaliation Claims (Counts III, VI, and X)

The Complaint contains three claims alleging retaliation against defendants under Title VII, 28 U.S.C. § 2000e-3(a) (Count III), the ADEA, 29 U.S.C. § 623(d) (Count VI), and the PHRA, 43 Pa. S.C. § 955(d) (Count X). For the reasons discussed below, the Court concludes that these claims must be dismissed because plaintiff has failed to establish a *prima facie* case of retaliation.

The elements of a retaliation claim under Title VII, the ADEA, and the PHRA are well-established.[3] "To establish a *prima facie* case of retaliation . . . a plaintiff must tender evidence that: '(1) she engaged in [a protected] activity . . . ; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" Moore v. City of Philadelphia, 461 F.3d 331, 340–341 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

With respect to the first prong, the Third Circuit has described engaging in a protected activity as "'oppos[ing] any practice made unlawful'. . . ." Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995) (quoting 29 U.S.C. § 623(d)). "'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including

---

[3] The Title VII framework for analyzing retaliation claims is also applicable to retaliation claims under the ADEA and the PHRA. See Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006) (observing that the "ADEA's provision against retaliatory discharge is identical to that of Title VII"); Curay-Cramer v. Ursuline Academy of Wilmington, Del., 450 F.3d 130, 135 n.4 (3d Cir. 2006) (stating that the Third Circuit has "previously recognized that Title VII and the [ADEA] . . . are comparable in many contexts," and "refer[ing] to ADEA cases throughout [the] opinion," which deals with Title VII); Theriault v. Dollar General, No. 08-2653, 2009 WL 1922199, *1 n.1 (3d Cir. 2009) ("The PHRA 'is construed consistently with interpretations of Title VII.' Our analysis and conclusion for [appellant's] Title VII retaliation claim are thus equally applicable to her PHRA retaliation claim.") (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995)).

making complaints to management.' To determine if retaliation plaintiffs sufficiently 'opposed' discrimination, 'we look to the message being conveyed rather than the means of conveyance.'" Moore, 461 F.3d at 343 (quoting Curay-Cramer, 450 F.3d at 135). However, at a minimum, the message being conveyed "must identify the employer and the practice—if not specifically, at least by context." Curay-Cramer, 450 F.3d at 135.

In Barber, the Third Circuit found that plaintiff failed to establish that he engaged in protected activity because the letter he wrote to the Human Resources Department did "not explicitly or implicitly allege that age was the reason for the alleged unfairness." 68 F.3d at 702. Rather, the letter complained generally about a promotion being given to another employee who plaintiff felt was less qualified than he was. Id. The Barber court concluded that "[a] general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination." Id.; see also Curay-Cramer, 450 F.3d at 135 (observing that the letter in Barber was "too vague to constitute opposition" because it failed to "allege[] that a protected characteristic was the basis for the adverse employment action," and reiterating that "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII").

In this case, plaintiff alleges that three retaliatory acts[4] occurred after plaintiff "complained to [d]efendant Iffrig about not being able to test for the more senior position." (Pl.'s Resp. 18.) However, plaintiff does not identify with particularity the complaints to which he refers. The record includes one letter and one e-mail written by plaintiff that can be characterized

---

[4] The first alleged retaliatory act is the conversation between defendant Iffrig and plaintiff that occurred on or before February 16, 2006. (Pl.'s Resp. 18–19.) The second is the disciplinary hearing that was scheduled to occur on February 27, 2006. (Id. at 19.) The third is plaintiff's transfer in May 2006 to a different department. (Id.)

12

as letters of complaint that were written before some of the alleged retaliatory acts. However, neither of these complaints are sufficient to constitute "protected activity."

First, plaintiff's letter of December 1, 2005 to defendant Iffrig complains generally "about the new duties that [defendant Iffrig] added to [plaintiff's] line of work" and questions why plaintiff was deemed "not quite suitable to hold the position" of the Design and Construction Project Manager when "an engineer" was deemed suitable instead. (Pl.'s Letter to Def. Iffrig.) The letter contains no suggestion, either "explicit or implicit," that the alleged unfairness was due to discrimination on the basis of age, race, or national origin. Rather, this letter falls well within the bounds of a "general complaint of unfair treatment" that the Barber court deemed insufficient to constitute protected activity.

Second, plaintiff's e-mail of February 16, 2006 to defendant Tustin states that plaintiff had been waiting for over two months to get "findings on the issue" broached in the December 1, 2005 letter to defendant Iffrig. (Pl.'s E-mail to Tustin.) The e-mail further states that defendant Iffrig was sent "to harass [plaintiff] and to acuse [sic] [him] of insubordination . . . ." (Id.) As with the first letter, this message never alleged any discrimination on the basis of age, race, or national origin. Thus, neither of these complaints constitute protected activity within the meaning of Title VII, the ADEA, or the PHRA and are insufficient to establish a *prima facie* case of unlawful retaliation. Accordingly, defendants' Motion for Summary Judgment is granted on plaintiff's retaliation claims in Counts III, VI, and X of the Complaint.

### D. Equal Protection Claim (Count VII)

In Count VII of the Complaint, plaintiff asserts a claim under 28 U.S.C. § 1983, alleging that he was "depriv[ed] of his rights, privileges or immunities as guaranteed him under the

13

Fourteenth Amendment." (Compl. ¶¶ 70–74.) In their Motion for Summary Judgment, defendants point out that plaintiff alleged "a generic violation of the 14th Amendment pursuant to Section 1983," which they then "surmised [to be] a substantive due process claim pursuant to the 14th Amendment." (Def.'s Mot. 16.) Defendants argued that this claim was both time-barred and lacking merit. (Id. at 16–17.) In his response to defendants' Motion, plaintiff stated that Count VII was actually an Equal Protection claim and summarily concluded that because defendants "argu[ed] something that was never alleged"—namely, a substantive due process claim—defendants "have failed to advance a properly supported argument." (Pl.'s Resp. 23.) In their reply, defendants addressed the Equal Protection claim, arguing that it was time-barred and lacking merit because plaintiff cannot demonstrate that he is similarly situated to members of an unprotected class and was treated differently from those members. (Def.'s Reply 7–8.)

The statute of limitations for plaintiff's § 1983 claim is two years. See Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998) (citing 42 Pa.C.S.A. § 5524) (explaining that Pennsylvania's two-year statute of limitations for personal injury claims applies to § 1983 claims). "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Id.

Defendants argue that the alleged injury occurred on May 27, 2004 when plaintiff's application to take the examination for promotion to the Design and Construction Project Manager position was rejected. (Def.'s Reply 8.) According to defendants, since plaintiff filed his Complaint with this Court on November 1, 2007, the injury occurred over two years prior and thus falls outside the limitations period. (Id.) Plaintiff counters that May 27, 2004 represents "just the initial opening, however." (Pl.'s Resp. 21.) Plaintiff argues that there are two dates of injury:

14

(1) December 1, 2005 when plaintiff "again expressed an interest in sitting for the examination, but was again denied an opportunity to do so, while the junior and less qualified Mr. Pallantino [sic] was allowed to sit for the examination;" and (2) in February 2006 when he again complained and "[d]efendant Iffrig followed him from the office . . . ." (Id.)

The Court concludes that defendants have the better argument on this matter. Specifically, the claimed "injury" under the Equal Protection clause must involve plaintiff, as a member of a protected class, being treated differently from members of an unprotected class to whom he is similarly situated. Pollock v. City of Philadelphia, No. 06-4089, 2007 WL 576264, *4 (E.D. Pa. Feb. 16, 2007); Young v. New Sewickley Tp., 160 Fed. Appx. 263, 266 (3d Cir. 2005). There is no evidence in the record to support plaintiff's contention that either his letter of December 1, 2005 or his e-mail of February 16, 2007—the contents of which are discussed in Part IV.B., *supra*—gave rise to such an injury. Rather, the only relevant "injury" was defendant City's decision not to allow plaintiff to take the examination for promotion while permitting Mr. Palentino to do so. Plaintiff's application to take the examination for promotion was denied on May 27, 2004. Mr. Palentino was permitted to take the examination at some point prior to May 16, 2005, the date on which he received the promotion. Both of these dates are over two years before plaintiff filed his Complaint. Thus, plaintiff's Equal Protection claim is time-barred. Accordingly, defendants' Motion for Summary Judgment is granted with respect to Count VII of the Complaint.

### E. Conspiracy Claim (Count VIII)

In Count VIII of the Complaint, plaintiff asserts a claim under 42 U.S.C. § 1985(3),

alleging that defendants Iffrig and Tustin engaged in a conspiracy "designed to deprive [p]laintiff of his rights, privileges or immunities as guaranteed him under the Fourteenth Amendment." (Compl. ¶ 76.)

In order to bring a claim under § 1985(3), plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (citing United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)); see also Collins v. Sload, 212 Fed. Appx. 136, 141 (3d Cir. 2007) (discussing § 1985(3) standard in the context of the disposition of a motion for summary judgment). In addition, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Scott, 463 U.S. at 834.

Defendants argue that plaintiff has presented "no proof of a conspiracy, or unlawful agreement" and "no evidence . . . that there was any racial or other improper animus." (Def.'s Mot. 18.) Rather, defendants posit, the record reflects a "lawful [agreement] to try to encourage [p]laintiff to listen and obey his superiors." (Id.) Plaintiff counters that summary judgment is inappropriate because there is a genuine issue of material fact as to whether there was an agreement between defendants Iffrig and Tustin. (Pl.'s Resp. 24.) In support of his position, plaintiff argues that even though "[d]efendant Iffrig denied that he ever spoke with [d]efendant Tustin about the problems with [plaintiff] and Mr. Palantino [sic]," that defendant Iffrig spoke

with defendant Tustin about plaintiff: 1) around December 15, 2005; 2) in February 2006 after receiving an "e-mail from [plaintiff] in February 2006;" and 3) before the disciplinary hearing held on February 27, 2006. (Id. at 24–25.) According to plaintiff, this evidence could lead a trier of fact to conclude that defendants Iffrig and Tustin "came to a meeting of the minds as to how the questions [plaintiff] raised would be handled, and that it was decided that he would be punished for his continued 'obstinance.'" (Id. at 25.)

After reviewing the entirety of the record presented on summary judgment, the Court concludes that plaintiff's conspiracy claims are unsubstantiated by the evidence. Specifically, plaintiff's claim fails at least with respect to the requirement of discriminatory animus because plaintiff has presented no evidence that defendants acted with the requisite invidiously discriminatory racial animus. As stated above, a § 1985(3) claim requires "some racial . . . invidiously discriminatory animus behind the conspirators' actions." Scott, 463 U.S. at 834. Indeed, "[t]he Supreme Court has stated that § 1985(3) is not intended to be a general, federal tort law and is not to apply 'to all tortious, conspiratorial interferences with the rights of others.' . . . Therefore, full effect must be given to the requirement of 'invidiously discriminatory motivation.'" Herring v. Chichester School Dist., No. 06-5525, 2007 WL 3287400, *9 (E.D. Pa. Nov. 6, 2007) (quoting The Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Ruling at the motion to dismiss stage, courts have consistently required that plaintiffs allege "more than conclusory allegations of deprivations of constitutional rights and have required a 'clear showing of invidiously, purposeful, and intentional discrimination between classes or individuals.'" Id. (quoting Robinson v. McCorkle, 462 F.2d 111 (3d Cir. 1972)); see

17

also Clarke v. Eisenhower, 199 Fed. Appx. 174, 175 (3d Cir. 2006) (affirming dismissal of § 1985(3) claim "because [plaintiff] does not allege any facts from which we can infer that defendants colluded with the requisite racial or otherwise class-based invidiously discriminatory animus to deprive [plaintiff] of his constitutional rights"); Parrott v. Abramsen, 200 Fed. Appx. 163, 165 (3d Cir. 2006) (finding that plaintiff's § 1985(3) claim was properly dismissed because, *inter alia*, plaintiff failed to allege "that racial, or otherwise class-based, invidiously discriminatory animus lay behind defendants' actions"); Limehouse v. Delaware, 144 Fed. Appx. 921, 923 (3d. Cir. 2005) (affirming dismissal where there was "no evidence sufficient to raise an inference of race-based motive for the defendants' alleged actions under § 1985[(3)]"). At summary judgment, no less can be required. Rather, in order to withstand summary judgment, plaintiff, as the nonmoving party who bears the ultimate burden of proof at trial, must "make a sufficient showing on an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Otherwise, the nonmoving party is entitled to judgment as a matter of law. Id.

In this case, plaintiff's deposition is the only evidence that plaintiff attached to his response to defendants' Motion for Summary Judgment. In his deposition, plaintiff was asked, as a general matter, with respect to the totality of the allegations in the Complaint: what "gives you the conclusion that it was because of your race?" (Pl.'s Dep. 64:17–18.) Plaintiff responded, "No. My ethnic [origin], not necessarily race. My accent is the only reason that I can think of." (Id. at 64:19–21.) Plaintiff's response, which was not even made specifically with regard to the § 1985(3) conspiracy claim, is inadequate evidence that defendants' actions were motivated by an invidiously discriminatory racial or ethnic animus. Moreover, this was the only context in

18

which race or ethnicity was mentioned in plaintiff's deposition. Thus, the Court concludes that, on the basis of this evidence, no reasonable finder of fact could find in plaintiff's favor on the § 1985(3) claim. Accordingly, defendants' Motion for Summary Judgment is granted with respect to Count VII of the Complaint.

**V.     Conclusion**

For the foregoing reasons, the Court grants defendants' Motion for Summary Judgment with respect to Counts I, II, III, VI, VII, VIII, IX, and X. The Court defers ruling on Counts IV and V of the Complaint and directs supplemental briefing on those claims in light of Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343 (2009). An appropriate Order follows.